UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

_____

In re:

Daniel J. Stebnitz,
    Debtor

Case No. 13-32097 PP
Chapter 7

_____

Michael F. Dubis, Trustee in Bankruptcy,

    Plaintiff,

v.

David S. Stebnitz

and

Gary C. Stebnitz,

    Defendants

Adversary No. 17-02110

_____

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
_____

Plaintiff hereby submits this Reply in response to Defendants' Opposition to Plaintiff's Motion for Summary Judgment ("Defendants' Opposition") and in further support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion").

I. *CONTRACT INTERPRETATION IS A LEGAL ISSUE PROPER FOR RESOLUTION ON SUMMARY JUDGMENT*

In their Opposition to Plaintiff's Motion, Defendants rely heavily on the assertion that "[a]mbiguity is a question of material fact and one that negates a motion for summary

judgment." *See, e.g.*, Defendants' Opposition at 7.  In a nutshell, the Defendants argue that the Court must deny Plaintiff's Motion because, according to the Defendants, the inclusion of the term "appraisal" renders the Operating Agreement's Withdrawal Provision ambiguous.  *Id*. at 5-8.

This position is unsupportable under Wisconsin law.  It is well settled that "matters relating to the interpretation of contract and whether or not it is ambiguous are questions of law."  *Capital Investments, Inc. v. Whitehall Packing Co., Inc.*, 91 Wis. 2d 178, 189 (1979).  Moreover, "[a]fter a contract has been found to be ambiguous, it is the duty of the courts to determine the intent of the parties at the time the agreement was entered into" and resolve the ambiguity.  *Id*. at 190.  If faced with ambiguous contract language, a court applying Wisconsin law may even reference extrinsic evidence to resolve the ambiguity, and such an analysis is not only proper, but commonplace to perform on summary judgment.  *See, e.g., MS Real Estate Holdings, LLC v. Donald P. Fox Family Trust*, 362 Wis. 2d 258, 286-89 (2015) (resolving contractual ambiguity on summary judgment) (cited favorably in Defendant's Opposition at 6).  Even if the Defendants' position that the term "appraisal" as used in the Operating Agreement renders the withdrawal provision ambiguous, therefore, such an ambiguity does not create a material factual issue requiring this Court to deny Plaintiff's Motion.

In actuality, Defendants fail to raise any issues of material fact that would prohibit this Court from resolving the parties' contract dispute on summary judgment.  The parties are in agreement as to (1) the terms and conditions of the LLC Operating Agreement,

(2) the July 20, 2016 letter Plaintiff sent to Defendants seeking to withdraw from the LLC, (3) the September 13, 2016 letter Defendants sent to Plaintiff refusing to purchase Plaintiff's interest in the LLC, and (4) that to date Defendants have yet to purchase Plaintiff's shares. Given these circumstances, whether Defendants have breached their duties under the Operating Agreement is ripe for adjudication by the Court at this time.

II. THE PLAIN LANGUAGE OF THE OPERATING AGREEMENT REQUIRES AN APPRAISAL OF THE PROPERTY, NOT A VALUATION OF THE LLC.

Turning to the specific language of the Operating Agreement's withdrawal provision, there is little doubt that the parties' use of the term "appraisal" reflects their agreement that a departing Membership Group receive from the remaining Membership Groups one-third of the appraised value of the Property upon withdrawing from the LLC. In fact, Defendants all but concede this point in their admission that "[a]t first glance, this may seem like the *only* reasonable interpretation." Defendants' Opposition at 7 (emphasis added).

Plaintiff's position is only buttressed by Defendants' argument that the appraisal language must "be looked at with reference to [the] contract as a whole." Defendants' Opposition at 6 (citing *MS Real Estate Holdings, LLC v. Donald P. Fox Family Trust.*, 362 Wis. 2d 258 (2015)). As explained in detail in Plaintiff's Motion, the key provisions of the Operating Agreement evidence the parties' intention that the LLC was created for the exclusive purpose of managing the Property, including paragraph 4 (stating the LLC's purpose to hold and provide for the usage and succession of the Property), paragraph 2 (establishing the LLC's principal place of business at the Property, a/k/a "Spirit Valley

Camp"), paragraph 1 (naming the entity "Spirit Valley Camp, LLC"), and paragraph 5 (establishing that the Members' only original capital contributions when creating the LLC were their respective one-third interests in the Property). *See also* Plaintiff's Opening Memorandum at 11.

These provisions demonstrate that the LLC was created for the exclusive purpose of protecting the value of the LLC's sole asset, the Property. Reading the withdrawal provision in this context makes clear that the parties were using the commonly understood definition of "appraisal" to refer to the mechanism for determining the current market value of the Property at the time the departing Membership Group withdraws from the LLC. Defendants' reference to other provisions in the Operating Agreement governing the allocation of profits and management decisions for the company do nothing to negate the LLC's clear objective, as these provisions are nothing more than standard boilerplate language contained in most operating agreements to govern those aspects of an LLC as needed.

Defendants, in stark contrast to Plaintiff's position, fail to cite a single provision in the Operating Agreement evidencing that the parties' intended the term "appraisal" to require a complicated business valuation of the LLC. In actuality, the following undisputed evidence demonstrates that the Defendants have a clear understanding of the distinction between an "appraisal," which refers to the process of obtaining the current market value of a property, and the "valuation" obtained by Defendants, which involves a complicated analysis of the current value of a business entity:

- Defendants' September 13, 2016 Letter (Ex. E of Clancy Aff.), which specifically states that Defendants obtained a valuation, not an appraisal, from Baker Tilley;

- The Baker Tilley report itself, which is titled as a "Valuation Report" of Spring Valley Camp, LLC and relied in part on a separate appraisal of the Property conducted by an independent real estate appraiser (*see* Ex. F of Clancy Aff.);

- Defendants' Opposition, where they admit that they sought a valuation, not an appraisal, of the LLC (*see* Defendants' Opposition at 2); and

- The Affidavit of Defendant Gary C. Stebnitz in support of Defendants' Opposition, in which Mr. Stebnitz admits that he and David S. Stebnitz sought a "valuation," not an appraisal, of the LLC (Stebnitz Aff. ¶¶ 11-13).

It is apparent from the Defendants' own communications, therefore, that they have a clear understanding of the difference between a property "appraisal" and a business "valuation." Had they desired to require a more complicated business valuation calculation when determining the value of a departing Membership Group's interest in the LLC, they were free to include such a requirement in the Operating Agreement. They elected instead to base the value of the departing Membership Group's interest on a current market appraisal of the Property, most likely in an effort to streamline the buy-out process. Under well-settled Wisconsin contract principles, Defendants cannot re-write the Operating Agreement simply because it does not now serve their best interests. At a minimum, even

if the Defendant's interpretation of the withdrawal provision is reasonable, Wisconsin law dictates that the resulting ambiguity must be resolved in favor of Plaintiff's much more reasonable interpretation for the reasons articulated above and in Plaintiff's Motion.

Dated: August 9, 2017.

By   /s/ Lawrence Clancy
Michael F. Dubis, Trustee, by his attorney
Lawrence Clancy
State Bar Number 1007530
Susan K. Allen
State Bar Number 1056757

1200 North Mayfair Road
Suite 430
Milwaukee, Wisconsin 53226-3282
lclancy@staffordlaw.com
sallen@staffordlaw.com
414.982.2850