UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    Daniel J. Stebnitz,                                         Case No. 13-32097-beh

                  Debtor.                                  Chapter 7

Michael F. Dubis,
Chapter 7 Trustee,

                  Plaintiff,

    v.                                                   Adversary No. 17-02110

David S. Stebnitz and
Gary C. Stebnitz,

                  Defendants.

**DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

       The Chapter 7 Trustee currently holds, on behalf of the estate, a one-third interest in Spirit Valley Camp, LLC, an interest previously owned by the debtor. The Trustee would like to liquidate that interest.

       The defendants, David Stebnitz and Gary Stebnitz, are the other one-third owners of the LLC. The Trustee has asked the Court to order the defendants to purchase the estate's one-third interest in the LLC for $80,000. The defendants deny that the LLC's Operating Agreement obligates them to pay $80,000 to purchase the estate's interest, disputing the scope of the formal appraisal required by the Agreement. Based on the plain language of the Agreement, the Court will grant the Trustee's request for summary judgment in part, and deny in part.

## Jurisdiction

The Court has jurisdiction over this matter under United States Code Title 11 and 28 U.S.C. section 1334(b). The action is a core proceeding under 28 U.S.C. sections 157(b)(2)(A) and 157(b)(2)(O). At a pretrial conference, the parties also consented to the Court's adjudication of the matter as to a monetary judgment, if necessary, given that the Trustee's underlying cause of action arises in contract under state law. (CM-ECF, Doc. No. 6.)

## Standard for Summary Judgment

Summary judgment is appropriate if the pleadings and affidavits on file show there are no genuine issues of material fact and the Trustee is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (incorporated by Fed. R. Bankr. P. 7056); *Omega Healthcare Inv'rs, Inc. v. Res-Care, Inc.*, 475 F.3d 853, 857 (7th Cir. 2007).[1] Granting partial summary judgment can serve a useful function in narrowing the issues for trial. *See* Fed. R. Civ. P. 56(g); *Hotel 71 Mezz Lender LLC v. Nat'l Retirement Fund*, 778 F.3d 593, 606 (7th Cir. 2015) ("[T]here is no doubt that a court may grant summary judgment . . . as to one party or one claim, leaving other claims to be addressed at a later point in the litigation."). The Court views all facts and draws all inferences in the light most favorable to the defendants as the non-moving parties.

---

[1] The defendants' brief sets out state law standards for summary judgment procedure under Wis. Stat. § 802.08. (CM-ECF, Doc. No. 12, at 2-4.) While state and federal standards are quite similar, bankruptcy courts apply federal rules and the caselaw interpreting those rules. *See* Fed. R. Bankr. P. 7056, incorporating Fed. R. Civ. P. 56(a); *In re Ultra Petroleum Corp.*, 571 B.R. 755 (Bankr. S.D. Tex. 2017) (federal courts apply federal law to procedural matters; Federal Rule of Civil Procedure 56 governs motions for summary judgment).

The mere existence of a factual dispute does not defeat a summary judgment motion; there must be a genuine issue of material fact for the case to survive. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Material" means that the factual dispute is outcome-determinative under governing law. To establish that a question of fact is "genuine," the non-moving party must present specific and sufficient evidence which, if believed by the trier of fact, would sustain a determination in its favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249.

## Background and Material Facts

The Trustee filed this adversary proceeding after a series of intra-family events, in an effort to obtain liquid assets for the benefit of debtor Daniel Stebnitz' creditors. Some chronology is necessary to understand the issue presented. The facts are taken from the Trustee's Statement of Undisputed Facts, as well as the exhibits appended to the complaint and the parties' briefs and affidavits on summary judgment. (CM-ECF, Doc. Nos. 1, 10, 11, 11-1 through 11-6, 12-1 and 12-2.)

On April 12, 2005, the debtor and the defendants formed Spirit Valley Camp, LLC (the "LLC") and executed the Members' Operating Agreement ("the Agreement"). The Agreement provides:

> **PURPOSE.** The purpose of the LLC is to acquire, hold title to and provide for the usage and succession of certain real property located in the Town of Tomahawk, Lincoln County, Wisconsin (the 'Property') more fully described in Exhibit 'B' attached hereto,

incorporated herein and expressly made a part hereof, *and such other property as the LLC shall determine from time to time.*[2]

(CM-ECF, Doc. No. 1-1, ¶ 4, emphasis added.) Exhibit B describes a property in Lincoln County, with three parcel identification numbers.

The Agreement designates the debtor and the defendants as "Members." Each member made an original capital contribution of his one-third interest in the Property when the LLC was formed. (*Id.*, ¶ 5.)

Each initial member is also a "Membership Group," and the LLC is limited to three membership groups so the LLC can transition to future generations without diluting the respective ownership percentages. (*Id.*, ¶¶ 5, 6, 9.A.) LLC management is vested in three managers, one from each membership group. (*Id.*, ¶ 7.)

Each membership group makes a modest annual capital contribution—$1,000—and those cash reserves are used for ordinary expenses such as insurance, real estate taxes and repairs. Any net profit or loss is allocated equally among the membership groups. (*Id.*, ¶¶ 9, 10, 13.) Any distributions are made equally to the members. (*Id.*, ¶ 15.) There was no evidence in the record on summary judgment that any allocations of profit or loss, or distributions, had ever occurred.

Paragraph 16 describes the general function of the LLC:

> **Management Decisions.** Except as otherwise provided in this Agreement, all decisions relating to the LLC business shall be made by a majority vote of the Managers who own a two-thirds (2/3) majority.

---

[2] The Trustee omitted the italicized portion of Paragraph 4 in Plaintiff's Statement of Undisputed Facts and in his Complaint.

> (A.) Extraordinary decisions not in the ordinary course of business, such as purchasing more real estate, levying Special Assessments, building additional improvements to the property and such shall require a unanimous vote of the Managers.

(*Id.*, ¶ 16.)

Last, the Agreement addresses the several ways in which a member might leave the LLC. If a member dies and is the sole member of his membership group, pursuant to Paragraph 18 his membership interest shall pass to one or more beneficiaries designated on Exhibit D to the Agreement. Paragraph 19 details gifting or transferring of a member's interest in the LLC. Paragraph 20.B details voluntary withdrawal, and its meaning is at the heart of this dispute:

> If a Membership Group wishes to withdraw from the LLC, it shall give the remaining Membership Groups written notice. The remaining Membership Groups shall purchase said departing Membership Group interest within 120 days of receipt of said notice. The purchase price shall be one-third (1/3) a formal appraisal, obtained and paid for by the departing Membership Group. If the remaining Membership Groups object to said appraisal, they have the option of requiring a second appraisal, at the departing Membership Group's cost. If an agreement cannot be reached, the Membership Groups shall obtain a third appraisal, at the cost of the departing Membership Group and the purchase price shall be the average of the three. If the departing Membership Group fails to obtain and/or pay for the appraisal, that Membership Group shall be considered in default.

(*Id.*, ¶ 20.B.) The Agreement does not define the term "appraisal."

On December 31, 2012, debtor Daniel Stebnitz and the defendants amended the Agreement to convey the debtor's ownership interest to his three beneficiaries, as if he had died and Paragraph 18 applied (the "Transfer"). (CM-ECF, Doc No. 1-2.) Subsequently, the debtor filed his Chapter 7

bankruptcy and shortly thereafter the Trustee began an adversary proceeding to avoid the debtor's Transfer and preserve the asset for the bankruptcy estate (Adversary No. 15-02016). On June 6, 2016, the Court deemed the Transfer null and void and directed the debtor's beneficiaries to convey and transfer the debtor's one-third interest in the LLC to the Chapter 7 Trustee. (Adversary No. 15-02016, CM-ECF, Doc. No. 56.)

On July 20, 2016, the Trustee sent written notice to the defendants of his election under Paragraph 20.B of the Agreement to withdraw the debtor's membership group interest from the LLC. (CM-ECF, Doc. No. 1-4.) The notice enclosed an appraisal conducted by Larry W. Foltz, valuing the Property at $240,000. (*Id.* at 3; CM-ECF, Doc. No. 12-1, ¶¶ 9-10.) The Trustee's notice also advised that Paragraph 20.B requires the defendants, as the remaining membership groups, to purchase, within 120 days, the debtor's membership interest held by the estate for one-third ($80,000) of such formal appraisal price. (CM-ECF, Doc. No. 1-4.)

The defendants' counsel responded to the Trustee by a September 13, 2016 letter. The letter purported to enclose a Baker Tilly valuation of Spirit Valley Camp, LLC. (CM-ECF, Doc. No. 11-5.) According to the letter, Tom Koth had appraised the Property at $180,000, which information Baker Tilly then used in its valuation and discounted by fifteen percent for lack of control and by twenty percent for lack of marketability; as a result, Baker Tilly valued the estate's one-third interest in the LLC at $40,800. (CM-ECF, Doc. Nos. 11-5 and 11-6.)

To resolve the matter with the estate, the defendants sought to further reduce the Baker Tilly valuation for potential realtor's fees, closing costs, and attorney's fees, maintenance and furnace costs, the $2,500 Baker Tilly fee, and a potential $15,000 business property exemption in the debtor's bankruptcy proceeding. *Id.* In sum, the defendants offered to purchase the one-third interest held by the estate for $25,000. (CM-ECF, Doc. No. 11-5.)

On September 22, 2016, the Trustee declined their offer, asserting it conflicted with the withdrawal procedure set out in the Agreement. (CM-ECF, Doc. No. 11-6.) The Trustee acknowledged the defendants' right to offset the withdrawing member's share of the maintenance fee and furnace cost ($1,500). (CM-ECF, Doc. No. 11-6, at 3.)

The Trustee later filed this adversary proceeding, and as part of his motion for summary judgment, submitted an affidavit and exhibits. The defendants responded with exhibits and an affidavit of Gary Stebnitz, who testified it is his "belief and understanding" that the appraisal required by Paragraph 20.B should be an appraisal for the LLC.[3] (CM-ECF, Doc. No. 12-1, at 2.)

---

[3] Despite this assertion, the Baker Tilly valuation that the defendants provided to the Trustee does not appear to be an appraisal of the LLC itself, but of only the estate's discrete one-third interest. The Trustee's letter, CM-ECF, Doc. No. 11-6, refers to a discount for lack of control and a discount for lack of marketability—discounts that are sometimes used to calculate the value of *shares* in a closely-held company, not the value of an entire company. Without having a copy of the valuation, the only reasonable inference the court can make is that Baker Tilly used the appraised value of the Property ($180,000), divided that by three to reach the estate's interest ($60,000), then applied a 15% discount for lack of control ($51,000) and a further 20% discount for lack of marketability ($40,800) to calculate the fair market value of the estate's one-third interest in the LLC.

## Arguments

The Trustee asserts three causes of action—declaratory judgment, breach of contract, and specific performance—each claim ultimately seeking an order requiring the defendants to purchase from the estate its one-third interest in the LLC for $80,000, based on the Foltz appraisal. The Trustee argues the Agreement's plain language requires a formal appraisal of the Property, not a valuation of the LLC.

The Trustee leads with a policy argument. He contends that the Wisconsin legislature enacted Chapter 183, Wis. Stats., to permit LLC entities to deal with their members on an efficient basis, including in enforcement of operating agreements. (CM-ECF, Doc. No. 9, at 7.) The Trustee argues that the Spirit Valley Camp, LLC Operating Agreement is just such a document, and that any members' dispute should be resolved through enforcement of the plain meaning of the terms of the Agreement.

In the second part of his argument, the Trustee appears to quote from Paragraph 20.B of the Agreement, to the effect that a departing membership group "must provide written notice of its intention to withdraw from the LLC along with a formal appraisal of the value of the Property." (CM-ECF, Doc. No. 9, at 8.) That is not, however, exactly what the Agreement says. The problem with Paragraph 20.B is that it requires a "formal appraisal" but does not specify what is to be appraised.

The defendants seize on that, urging that the Agreement, in failing to define the term "appraisal," or exactly what is to be appraised, is ambiguous.

They assert Paragraph 20.B requires a valuation of the LLC, to determine a withdrawing member's one-third interest. They argue that both parties' interpretations are reasonable, thus establishing ambiguity. The defendants also point to the first adversary proceeding brought by the Trustee, after which the Court ordered that the debtor's interest in the LLC be transferred to the estate. The defendants dispute the Trustee's argument that the sole purpose of the LLC was to hold the Property, noting the potential for acquisition of additional property.

In reply, the Trustee contends there is no provision in the Agreement evidencing an intent that the formal appraisal "require a complicated business valuation of the LLC." (CM-ECF, Doc. No. 13, at 4.)

## Discussion

Under Wisconsin law, interpretation of a written contract is a legal question. *Ash Park, LLC v. Alexander & Bishop, Ltd.*, 2015 WI 65, ¶32, 363 Wis. 2d 699, 866 N.W.2d 679. The Court must determine what the parties contracted to do as evidenced by the words they chose. *Ash Park*, 2015 WI 65, ¶35. In doing so, the Court should interpret the contract so that no aspect of the contract is surplusage, and give undefined contract terms their plain or ordinary meaning. *Huml v. Vlazny*, 2006 WI 87, ¶52, 293 Wis. 2d 169, 716 N.W.2d 807. When a contract term is undefined, the contract should be considered as a whole. *MS Real Estate Holdings, LLC v. Donald P. Fox Family Tr.,* 2015 WI 49, ¶38, 362 Wis. 2d 258, 864 N.W.2d 83.

Both parties cite *Gottsacker v. Monnier*, 2005 WI 60, ¶23, 281 Wis. 2d 361, 697 N.W.2d 436. There, the supreme court explained that when the contract fails to define a term, such as "appraisal," the court should consult a dictionary definition. If that term is reasonably susceptible to more than one construction, it is ambiguous. *Id.* An ambiguous contract provision can be construed through use of extrinsic evidence, *Ash Park*, 2015 WI 65, ¶36, such as testimony of the parties as to their intent. But if a trial court must ascertain intent of the parties via extrinsic evidence, that is a question not for summary judgment but for trial. *625 Milwaukee LLC v. Switch & Data Facilities Co, LLC*, No. 06-C-0727, 2009 WL 10677078, at *6 (E.D. Wis. Feb. 11, 2009); *Mgmt. Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 177 (1996).[4] Essentially, it means there is a genuine issue as to a material fact. An unambiguous contractual provision, on the other hand, is interpreted as it stands and the "attempt to determine the parties' intent ends with the four corners of the contract, without consideration of extrinsic evidence." *Huml*, 2006 WI 87, ¶52.

The Trustee offers a definition of "appraisal" as "a valuation of property by the estimate of an authorized person," plus a more general definition of "an act of estimating or evaluating especially by one fitted to judge." (CM-ECF,

---

[4] In his reply brief, the Trustee cites *Capital Investments, Inc. v. Whitehall Packing Co., Inc.*, 91 Wis. 2d 178, 189-90 (1979) for the directive "after a contract has been found to be ambiguous, it is the duty of the courts to determine the intent of the parties at the time the agreement was entered into" and resolve the ambiguity. The *Capital Investments* court was describing the duty of the reviewing court, there the state supreme court. 91 Wis. 2d at 189, citing *Zweck v. D P Way Corp.*, 70 Wis. 2d 426, 435-36, 234 N.W.2d 921 (1975) (interpretation of a contract and whether it is ambiguous are questions of law, and "this court may interpret the contract anew").

Doc. No. 9, at 12, citing *Webster's Third New Int'l Dictionary* 105 (3d ed., 1993).) The defendants do not offer competing dictionary definitions, but assert, without citation, "[a]t the time of formation of the LLC, the defendants intended the appraisal provision to reference the LLC." (CM-ECF, Doc No. 12, at 7.)

The Trustee's plain language argument is incomplete, but not fatally so. He reads the Agreement to require that when a member wishes to exit the LLC, he must submit a formal appraisal of the Property to the other members, as a prelude to setting a buy-out price. The Trustee relies on only part of Paragraph 4 to assert the purpose of the LLC, and thereby equates the LLC entity with the camp or the Property itself. The Trustee's reply brief even asserts "[t]hese provisions demonstrate the LLC was created for the exclusive purpose of protecting the value of the LLC's sole asset, the Property." (CM-ECF, Doc. No. 13, at 4.)

Reading the Agreement as a whole, the Court finds the Trustee's argument is close enough. While the Agreement allows for the potential that the LLC members may unanimously vote to acquire more real estate beyond the original Property, there is no evidence they have done so. The Agreement plainly provides that the purpose of the LLC is to hold the Property, and any other acquired property, for the enjoyment of the members and their families. Nowhere does the Agreement signal a business purpose of the LLC. There is no provision, for example, for renting the Property, or for regularly buying and selling parcels of real estate to obtain a profit. In light of the LLC's limited

purpose, it is reasonable to read Paragraph 20.B to require an appraisal of all of the property held by the LLC.

The defendants point out that in the first adversary proceeding when the Trustee sought to have the debtor's LLC asset (re)conveyed from the debtor's children back to the estate, the Trustee repeatedly referred to return of the debtor's *interest in the LLC*. (Adversary No. 15-02016, CM-ECF, Doc. No. 1, at 6 and Doc. No. 21, at 6; CM-ECF, Doc. No. 20, at 12; and CM-ECF, Doc. No. 49, at 5.) Their point is that the Trustee did not refer to return of the debtor's interest in the Property alone. This is at least an inference that the Trustee recognizes that the thing of value to be appraised is the debtor's interest in the LLC. But the fact is at the time the Trustee invoked the withdrawal procedure of Paragraph 20.B, the LLC held no other real estate. The only thing that could be appraised was the original Property.[5]

The defendants do not offer a reasonable interpretation of the contract provision to counter the Trustee's reading. As noted above, the Agreement shows an intent to keep the LLC (and the Property) in the family, with interests equally apportioned between the families of the defendants and the debtor. The Agreement describes this as an intent "to provide for the transition to future generations [of the initial members] without diluting their respective ownership percentages" and instructs that the Agreement "shall be

---

[5] There is no dispute that a member should be current on his share of maintenance costs prior to withdrawal, *see* CM-ECF, Doc. Nos. 11-5 and 11-6, but neither party argues that maintenance costs are a constituent of, or deduction from, the "formal appraisal" required by Paragraph 20.B.

interpreted with this goal in mind." (CM-ECF, Doc. No. 1-1, ¶ 6). This goal is apparent in the transfer-restriction provisions of the Agreement, which limit the transfer of a member's interest to only two other categories of individuals: (1) the member's designated beneficiaries (*id.*, ¶¶ 18-19); and (2) the other membership groups (*id.*, ¶¶ 20-21).

Given this stated intention, it is unreasonable to read the buy-out price of "one-third (1/3) a formal appraisal" to mean instead a valuation of an individual one-third share in the LLC that factors in deductions or discounts for "lack of control" or "lack of marketability," as the defendants propose. The purpose of the buy-out provision in Paragraph 20.B is to allow the remaining membership groups to retain their investment positions in the family-owned property, and to allow the exiting member to recapture his investment, in shares proportionate to the value of the LLC's assets—currently, the Property. Applying any kind of discount for lack of control or similar considerations is inconsistent with the Agreement's stated purposes, and would allow the remaining membership groups to purchase one-third of the LLC's assets for less than one-third their appraised value, reaping a windfall at the expense of the exiting family member.[6] A discount for lack of marketability is likewise inappropriate when the Agreement obligates the remaining membership groups to purchase the exiting member's interest. In sum, the defendants' reading of

---

[6] For similar reasons, the Wisconsin Supreme Court has concluded that a "minority discount" (for lack of control) is inappropriate in determining the fair value of company shares under the Wisconsin dissenters' rights statutes. *HMO-W Inc. v. SSM Health Care Sys.*, 2000 WI 46, ¶ 44, 234 Wis. 2d 707, 726, 611 N.W.2d 250, 258.

the contract is unreasonable, and therefore does not render the contractual provision ambiguous.

Read as a whole, the Court finds that the Agreement is plain in providing that the members or membership groups of the LLC each have a one-third interest in the LLC, the purpose of which is to hold property for member family enjoyment. Presently, the only asset the LLC owns is the original Property. Accordingly, the formal appraisal required by Paragraph 20.B is an appraisal of whatever property the LLC holds, and at this time, the LLC holds only the original Property. Because the intent of the drafters of the Paragraph 20.B can be derived from the four corners of the Agreement, there is no need to proceed to a fact-finding hearing to consider extrinsic evidence, such as the affidavit of Gary Stebnitz, regarding his belief and understanding. *625 Milwaukee LLC,* 2009 WL 10677078, at *6. The policy behind the LLC statute, Wis. Stat. § 183.1302(1), to give maximum effect to the enforceability of operating agreements, is not outcome-determinative here, but does reinforce the long-standing principle that a court will interpret contract language as it finds it. *Gottsacker*, 2005 WI 69 (rights and obligations of LLC to its members, of the members to the LLC, and to each other are set by chapter 183, and rights and liabilities may be adjusted through an operating agreement).

## The Various Requests for Relief

The Trustee asks for a declaratory judgment as to the meaning of the term "appraisal," and an order directing the defendants to pay the Trustee $80,000 for the estate's interest in the LLC, based on the Foltz appraised

value of $240,000. For the reasons stated above, the Court GRANTS a declaratory judgment in the Trustee's favor, to the extent that the Agreement requires a formal appraisal of the property held by the LLC when a member invokes the withdrawal mechanism of Paragraph 20.B. Here there is no dispute that the Foltz appraisal is a formal appraisal of the property presently held by the LLC.

The Trustee next asserts that the defendants have breached the Agreement by not objecting to the Foltz appraisal within 120 days, and seeks summary judgment on his breach of contract claim. There is a genuine issue of material fact on this claim, as a competing reasonable interpretation of the September 13, 2016 letter is that by submitting the Koth appraisal itself, the defendants objected timely to the Foltz appraisal and so complied with the second appraisal option of Paragraph 20.B. The Court therefore DENIES summary judgment on the breach of contract claim.

Last, the Trustee seeks an order for specific performance by the defendants to comply with Paragraph 20.B by making a payment of $80,000. For the same reasons the Court declines to enter summary judgment on the breach of contract claim, the Court DENIES summary judgment on the claim for specific performance.

## Conclusion

For the reasons stated above, the Court concludes that the Trustee's motion for summary judgment should be granted in part and denied in part. Unless the Trustee notifies the Court and the defendants within 14 days of the

date of this Decision that he will accept the Koth appraisal itself as compliance with the second appraisal option of Paragraph 20.B, the Court will proceed to schedule an evidentiary hearing on the Trustee's claims for breach of contract and specific performance.[7]

A separate order will be entered.

Dated: February 22, 2018

By the Court:

Beth E. Hanan
United States Bankruptcy Judge

---

[7] Courts may enter summary judgment in favor of a non-moving party where the agreed-upon-facts support such a judgment. *Jones v. Union Pacific R.R. Co.*, 302 F.3d 735, 740 (7th Cir. 2002); *Goldstein v. Fid. & Guar. Ins Underwriters, Inc.*, 86 F.3d 749, 750 (7th Cir. 1996). The party against whom summary judgment is entered, however, must be on notice of the possibility and had the opportunity to respond. Fed R. Civ. P. 56(f) (incorporated by Fed. R. Bankr. P. 7056); *Hotel 71 Mezz Lender LLC v. Nat'l Retirement Fund*, 778 F.3d 593, 603 (7th Cir. 2015) (the opportunity to respond "includes the chance to marshal evidence and argument in opposition to summary judgment, even where, as here, the party already sought and failed to obtain summary judgment in its favor."); *Goldstein*, 86 F.3d at 750 ("the entry of summary judgment is inappropriate when it takes a party by surprise"). The Court is reluctant at this point to entertain partial summary judgment in favor of the defendants on the breach of contract and specific performance claims where the parties have not placed the Koth appraisal in the record.